IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **BARRY LANDIS, DERIVATIVELY ON BEHALF OF RIBBOW MEDIA GROUP, LLC, AND INDIVIDUALLY,** | )<br>)<br>)<br>) |
| **Plaintiff,** | ) |
| v. | )<br>) Case No. 3:24-CV-00241 |
| **ASH GREYSON, JASON BROWN, ROBERT TAYLOR, GLOBAL DEVELOPMENT ALPHA, LLC, BY KRAVE, LLC, RIBBOW MEDIA GRP, CALLED HIGHER STUDIOS, INC., WILES + TAYLOR, CO, PC,** | )<br>) **JURY DEMANDED**<br>) Judge Eli J. Richardson<br>) Magistrate Judge Barbara D. Holmes<br>)<br>)<br>) |
| **Defendants.** | ) |

**JASON BROWN, GLOBAL DEVELOPMENT ALPHA, LLC, CALLED HIGHER STUDIOS, INC, AND BY KRAVE, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS, AND FOR AN AWARD OF FEES UNDER TENN CODE ANN § 48-249-804 AND THE PRIVATE SECURITIES LITIGATION ACT**

This lawsuit is comprised of individual and derivative claims brought by Plaintiff Barry Landis. Defendants Jason Brown ("Brown"), Global Development Alpha, LLC ("GDA"), Called Higher Studios, Inc. ("CHS") and By Krave, LLC ("By Krave"), are entitled to dismissal of all claims filed against them.

To be direct, all of the derivative claims are subject to dismissal because Mr. Landis failed to "make demand" as required by Tenn. Code Ann. § 48-248-801 *et seq.*, and then failed to comply with Fed. R. Civ. P. 23.1. Meanwhile, Plaintiff's securities claims are subject to dismissal because Mr. Landis and Ribbow Media Group, LLC ("Ribbow") have never owned any of the subject

1

securities. And, as for the rest of the Complaint, it suffers from similar problems: the alleged facts simply fail to state claims upon which relief can be granted.

Accordingly, the Court should dismiss all of Mr. Landis's claims against these Defendants, and then make an award of fees under the Tennessee Revised Limited Liability Company Act (for the derivative claims) and under the Private Securities Litigation Reform Act (the "PSLRA") for the securities claims.

**FACTS**

Much of Mr. Landis's Complaint is directed to the Co-Defendant Ash Greyson. Another large portion is purely conclusory. Thus, as for the parties which filed this Motion, below are all of the facts Mr. Landis alleged in Complaint:[1]

> 30. On February 22, 2023, Defendants Brown, Global, Called Higher, and BKLLC, with the knowledge and approval of Defendant Greyson, but without the consent or knowledge of Plaintiffs, registered with the Tennessee Secretary of State's office the Assumed Name of RMGRP for use by BKLLC.
>
> 31. In February 2023, Defendants Brown, Global, Called Higher, BKLLC, and Greyson established a new corporate bank account under the name of RMGRP.
>
> 32. Subsequent to establishing this new bank account, Defendants Greyson, Brown, Global, Called Higher, and BKLLC directed customers and clients of RMG to remit invoice payments into this new RMGRP account, bypassing RMG completely (see, paragraph 37 below and the RMGRP account number on invoices referenced therein and on Exhibit 4 attached hereto and incorporated herein) (the "Fraudulent Transfer"). Upon information and belief, and without knowledge or consent of Plaintiffs, in violation of paragraph 7.4 of the RMG Operating Agreement, in February 2023, Defendants conspired with and on behalf of Called Higher to amend, restate, and file with the SEC an updated Offering Memorandum [Exhibit A to Form C] (incorporated by reference and included herein) ("Exhibit 3"). alluding to a licensing agreement with RMG (see Exhibit 3, page 4, "Corporate History").[2]

---

[1] These Defendants note that interspersed with such facts are a fair amount of conclusory statements and commentary as well.

[2] The Complaint repeatedly refers to this Licensing Agreement. However, a copy was not attached to the Complaint (despite Plaintiff having been provided a copy of the same, pre-suit, by undersigned counsel).

33. This licensing agreement ostensibly provided that BKLLC, a wholly-owned subsidiary of Called Higher, would perform the services that RMG had actually contracted with third party clients and customers to perform, thus fraudulently tricking RMG clients and customers into believing RMG was performing the services and that RMG was receiving payment.

34. Additionally, the license agreement ostensibly and illicitly provided that BKLLC would manage and control the revenue and expenses of RMG, all without knowledge of Plaintiffs.

35. As consideration for the licensing agreement, RMG was to receive the first One Million Two Hundred Thousand Dollars ($1,200,000.00) of the "Net Profits" from the Called Higher feature film, "Camp Hideout" (Exhibit 3, Related Party Transactions, page 32). The film released into theaters on September 15, 2023. However, these "Net Profits" amount to merely a refund of the amount redirected from RMG into RMGRP's bank account.

36. As explained in the Called Higher SEC Memorandum (Exhibit 3, Related Party Transactions, pages 31-32), Net Profits will only be calculated on Called Higher's forty-five percent (45%) adjusted gross receipts it receives for the film and then only after the majority investor earns back approximately Two Million Four Hundred and Fifty Thousand Dollars ($2,450,000.00). The upshot being that Plaintiff's had a low probability of earning Net Profits while Defendant's Greyson, Brown, Global, Called Higher, and BKLLC would earn monies regardless. As of November 27, 2023, industry box office reports, "Camp Hideout" only generated One Million One Hundred Twenty-Eight Thousand Six Hundred and Twenty-six Dollars ($1,128,626) in gross box office receipts. (Box Office Mojo, https://www.boxofficemojo.com/title/tt14051976/?ref_=bo_se_r_1, last visited March 1, 2024).

37. All conversations, decisions, and agreements between Greyson, Brown, Global, Called Higher, and BKLLC regarding this illusory licensing agreement were conducted without the knowledge of or consent from the President/Chief Executive Officer of RMG as required by and in direct violation of paragraph 7.4 of the Operating Agreement.

38. One of the contracts expropriated under the licensing agreement was the February 2023, RMG contract with Kingdom Faith Marketing Service, LLC ("Kingdom Faith") to provide marketing services to Kingdom Faith's feature film, Jesus Revolution.

---

So that the Court can see the contents of that agreement, Defendants have attached a copy here as Exhibit 1 to this Memorandum. The Court can consider the contents of that agreement for purposes of a motion to dismiss without converting the same to a motion for summary judgment. Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir. 1999) ("when a document is referred to in the complaint and is central to the plaintiff's claim....the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment").

3

39. RMG submitted two invoices to Kingdom Faith (Invoice #13601 dated February 27, 2023, for $1,000,000 and Invoice #13604 dated March 7, 2023, for $115,000, respectively (incorporated by reference and included herein as Exhibit 4) (the "Fraudulent Transfer"), with each invoice redirecting Kingdom Faith to remit payments via wire transfer into the new RMGRP bank account, thus bypassing RMG entirely and depriving Plaintiffs of their rightful share of monies.

40. Upon information and belief, the Fraudulent Transfer was initiated to bolster Called Higher's standing with the SEC and/or for the purpose of attracting investors.

41. Plaintiffs were subsequently deprived of access to banking information for RMG and thus, upon belief, have a good faith concern that even more transfers were done fraudulently.

42. Upon information and belief, on or around September 30, 2023, only seven (7) months after entering the licensing agreement with RMG and only fifteen (15) days after the release into theaters of "Camp Hideout," Defendants conspired with Called Higher to amend, restate, and file form 1-SA (incorporated by reference and included herein as "Exhibit 5") (the "Form 1-SA") with the SEC in which the termination of licensing agreement was announced.

43. "Although forecasts of film receipts are mostly best guesses, in the aggregate it is fairly certain that perhaps 85% of all theater exhibition revenues will be generated within the first three months of release and almost all the remainder by the end of the second year." (Harold L.Vogel, Entertainment Industry Economics, 198 (Cambridge University Press, 9th ed., 2015).

44. Upon information and belief, because this licensing agreement was intentionally terminated only fifteen (15) days after the "Camp Hideout" film was released, well before any Net Profits could be realized, so that RMG would be deprived of ever receiving its benefit of the bargain, thereby reinforcing Plaintiffs' claim that the licensing agreement was illusory and the aforementioned funds transfer from RMG to RMGRP was fraudulent.

45. Upon information and belief, the funds transfer under the Fraudulent Transfer were never redeposited into the bank accounts of RMG.

[…]

49. For the purpose of creating a false perception of a healthy balance sheet and income statement for Called Higher, and thus fraudulently inducing potential investors, Defendants created a sham licensing agreement between BKLLC and RMG under which BKLLC could register the assumed name of RMGRP.

50. Upon information and belief, in violation of the RMG Operating Agreement, Defendants Greyson, Brown, Global, Called Higher, and BKLLC, with the approval of Taylor and WTC, opened a bank account at Pinnacle Bank, Nashville, Tennessee, under the name "By Krave, LLC dba Ribbow Media Grp" for

4

the sole purposes of making the Fraudulent Transfer which redirected revenue earned and generated by RMG into the RMGRP account.

[…]

53. In Called Higher's "Offering Memorandum: Part II of Offering Document (Exhibit A to Form C)" as filed with the SEC in February 2023, Defendant Called Higher admits to entering a "licensing" agreement with RMG (see Exhibit 3, page 4, Corporate History), but just seven short months later, after receiving at least $1,115,000 from RMG clients through the Fraudulent Transfer through which it propped up Called Higher's balance sheet and income statement, then unceremoniously terminated the agreement.

[…]

60. In September 2023, Defendants then terminated the fraudulent license agreement after Defendants had been unjustly enriched and after Called Higher used the fraudulent transactions to present a false perception of its financial health and strength, thus manipulating and deceiving investors and potential investors while implicating Plaintiffs.

61. The Fraudulent Transfer, including both the secretive creation of the RMGRP bank account and the receiving of invoice payments rightfully belonging to RMG was intended to deceive not only the SEC, but Called Higher investors and potential investors into believing Called Higher had a stronger cash flow than it actually had (in reality, upon information and belief, the Fraudulent Transfer was the only revenue Called Higher actually had on its balance sheet).

(*See generally,* Compl. ¶ 30-63).

## LAW & ARGUMENT

The claims Mr. Landis pled against these Defendants are as follows:

- Counts One and Two: Securities Fraud (both derivatively and individually).
- Count Five: Procurement of Breach of Contract (both derivatively and individually).
- Count Nine: Conversion (both derivatively and individually).
- Count Eleven: Civil Conspiracy (both derivatively and individually).
- Count Twelve: Unjust Enrichment (both derivatively and individually).

For the reasons stated below, all of these claims are subject to dismissal with prejudice at this time under Fed. R. Civ. P. 12(b)(6).

5

## I. All of Mr. Landis's derivative claims are subject to dismissal for failure to make demand and failure to comply with Fed. R. Civ. P. 23.1.

Taking the allegations of the Complaint as true, Mr. Landis failed to make demand prior to filing his derivative claims, and then failed to show that such a demand was futile. Thus, under Tenn. Code Ann. § 48-249-802 and Fed. R. Civ. P. 23.1, his derivative claims against these Defendants must be dismissed.

Ribbow is a Tennessee limited liability company. (Compl. ¶ 9). Per its operating agreement, it is "member managed." (Compl. Ex. 1, at Sec 7.1: "The management of the business and affairs of the Company shall be vested in the Members"). Thus, any derivative claim filed on behalf of the company is subject to the Tennessee Revised Limited Liability Company Act's pre-suit demand requirements. *See*, Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 108–09 (1991) (holding that state law controls pre-suit demand requirements in Federal Courts).

Those requirements are as follows:

> A member or holder of financial rights of a member-managed LLC may bring a proceeding in the right of an LLC to recover a judgment in its favor, if members or other persons with authority to do so have refused to bring the proceeding, or if an effort to cause those members or other persons to bring the proceeding is not likely to succeed.

Tenn. Code Ann. § 48-249-801.

In turn, the making of demand (or the reason for failing to do so) is required to be pled by Federal Rule of Civil Procedure 23.1, as well as the aforementioned Tennessee Act:

> (b) Pleading Requirements. The complaint must be verified and must:
>
> > (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
> >
> > (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
> >
> > (3) state with particularity:

> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>
> (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b). *See also,* Tenn. Code Ann. § 48-249-802; Miller v. Miller, 2023 WL 2017529, at *4 (Tenn. Ct. App. Feb. 15, 2023) ("a member purporting to bring a derivative action on behalf of an LLC [must] make a demand on the other members to bring the action or otherwise show that it would have been futile to make such a demand.").

Mr. Landis's Complaint does not satisfy the procedural requirements of Rule 23.1 or the substantive requirements of Tennessee law. There is no allegation that demand was made, and no explanation as to why demand was not made (let alone an explanation with "particularity"). Nor is the Complaint verified. Thus, taken as true, the Complaint shows that no demand was made, and no compelling reason exists for that failure.

Because Mr. Landis did not allege that demand was made, did not allege facts sufficient to establish one of the reasons demand may be excused, and did not comply with Rule 23.1, he has failed to state a claim upon which relief can be granted. Thus, all of his derivative claims are subject to dismissal. *See,* City of Pontiac Police & Fire Ret. Sys. v. Jamison, 2022 WL 884618, at *22 (M.D. Tenn. Mar. 24, 2022) (Richardson, J.).

## II. The securities counts are subject to dismissal because Mr. Landis and Ribbow never owned any of the subject securities, and thus cannot make out the elements of their claims.

Counts One and Two of the Complaint are claims for alleged violations of the Securities Exchange Act. While the specific statutes Plaintiff cites do not contain an express private right of action, the United States Supreme Court has previously held that "Section 10(b).... affords a right of action *to purchasers or sellers* of securities injured by its violation." Tellabs, Inc. v. Makor

7

Issues & Rts., Ltd., 551 U.S. 308, 318, (2007) (emphasis and italics added). That holding highlights the major problem with Plaintiff's claims: Mr. Landis does not claim to personally, or derivatively, be a purchaser or seller of the securities at issue—thereby making him and Ribbow incapable of satisfying the elements of a securities fraud claim.

As stated by the Supreme Court:

In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation

Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, 552 U.S. 148, 157 (2008). In order to satisfy these elements, "one asserting a claim for damages based on the violation of Rule 10b-5 must be either a purchaser or seller of securities. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 749 (1975).

Here, Mr. Landis has not pled that he or Ribbow were purchasers, owners, or sellers of any security offered by any of these Defendants. Thus, he not only failed to pass the threshold test of being a purchaser or seller, but has also not pled facts capable of supporting the third, fourth, fifth, and sixth elements of a claim for securities fraud, as all of those elements are dependent upon actually buying or selling the security in question. His failure to be a purchaser or seller of the referenced securities is fatal to his claims. *Id.*

Meanwhile, Mr. Landis also has not pled facts sufficient to establish that a misrepresentation was made. The Complaint asserts, at its most forceful, that any Defendants' statement that By Krave had entered a licensing agreement with Ribbow was somehow false. (Compl. ¶ 59). However, that licensing agreement exists. It is attached hereto as Exhibit 2. It was signed on Ribbow's behalf by Ash Greyson, who was authorized to enter into the same pursuant

to Section 7.4(a) of Ribbow's operating agreement.³ (*Id.*; Compl. Ex. 1). Representing that a licensing agreement between Ribbow and By Krave existed was not a misrepresentation—and Plaintiff has not pled facts sufficient to show otherwise. This too requires dismissal of Plaintiff's securities fraud claims as the existence of a misrepresentation is an essential element of any such claim.

Finally, Mr. Landis also failed to plead facts sufficient to support the element of scienter. With regard to that element, the Sixth Circuit has held as follows (while applying the PSLRA, which also applies here):

> Regarding the scienter element, the PSLRA provides that a securities-fraud plaintiff "shall, with respect to each act or omission alleged ... state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind" in violating the securities laws. 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). A strong inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314, 127 S.Ct. 2499. Courts must consider "plausible opposing inferences." *Id.* at 323, 127 S.Ct. 2499. Complaints that fail to meet this standard "shall" be dismissed. 15 U.S.C. § 78u-4(b)(3)(A).
>
> In securities-fraud cases, scienter can be established by either demonstrating a "knowing and deliberate intent to manipulate, deceive, or defraud" or "recklessness." *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016) (quoting *Ley v. Visteon Corp.*, 543 F.3d 801, 809 (6th Cir. 2008)). "Recklessness is ... highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Id.* (quoting *Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir. 2011)). "Recklessness requires more than negligence and is 'akin to conscious disregard.' " *Id.* (quoting *Frank*, 646 F.3d at 959). "Before drawing an inference of recklessness, courts typically require 'multiple, obvious red flags,' demonstrating an 'egregious refusal to see the obvious or to investigate the doubtful.' " *Id.* (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 686–87, 695 (6th Cir. 2004)).
>
> To decide if a plaintiff adequately pleaded a strong inference of scienter, we use a three-part test "to determine the sufficiency of a plaintiff's scienter allegations." *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 979 (6th Cir. 2018) (citing

---

³ The specific language allowing Mr. Greyson to enter the agreement is discussed in more detail in Section III, *supra*.

*Tellabs*, 551 U.S. at 322–23, 127 S.Ct. 2499). "First, we must accept all factual allegations in the complaint as true." *Tellabs*, 551 U.S. at 322, 127 S.Ct. 2499. Next, we review the allegations holistically "to determine 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Dougherty*, 905 F.3d at 979 (quoting *Tellabs*, 551 U.S. at 322–23, 127 S.Ct. 2499). Finally, "we 'must take into account plausible opposing inferences' and decide whether 'a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.' " *Id.* \*813 (quoting *Tellabs*, 551 U.S. at 323–24, 127 S.Ct. 2499).

City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc., 29 F.4th 802, 812–13 (6th Cir. 2022).

Here, Plaintiff has not pled with particularity facts giving rise to scienter. Nor can Plaintiff do so given that the licensing agreement his claim is based upon actually exists. (*See*, Exhibit 2, hereto). After all, it is impossible to intend to defraud when telling the truth, and therefore impossible for Plaintiff to show scienter.

Put short, both of Plaintiff's security fraud claims are so deficient as to be frivolous. And, to be clear, Plaintiff was put on notice of this prior to filing suit. Plaintiff was made aware of the requirement of being a buyer or seller of a security *prior to his filing of these claims* and yet Plaintiff still filed them despite knowing they were not meritorious. (*See,* Exhibit 2, November 2024 Letter). Accordingly, for all of the reasons stated herein, Counts one and two must therefore be dismissed.

### III. No contract was breached, and thus Plaintiff's procurement of breach of contract claim must be dismissed.

In order to state a claim for procurement of breach of contract, Mr. Landis needed to state facts satisfying the following elements:

> 1) there must be a legal contract; 2) the wrongdoer must have knowledge of the existence of the contract; 3) there must be an intention to induce its breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract; 6) the act complained of must be the proximate cause of the breach of the contract; and, 7) there must have been damages resulting from the breach of the contract.

Myers v. Pickering Firm, Inc., 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997). *See also,* New Life Corp. of Am. v. Thomas Nelson, Inc., 932 S.W.2d 921, 926 (Tenn. Ct. App. 1996). Here, Mr. Landis failed to allege facts that would amount to a breach of contract. Nor has he alleged facts showing that he was personally damaged. Accordingly, this claim must be dismissed with prejudice.

Mr. Landis's theory as to these Defendants is contained in paragraphs 32, 37, 93 and 94 of the Complaint. Those paragraphs read as follows in pertinent part:

> 32.    ….Upon information and belief, and without knowledge or consent of Plaintiffs, in violation of paragraph 7.4 of the RMG Operating Agreement, in February 2023, Defendants conspired with and on behalf of Called Higher to amend, restate, and file with the SEC an updated Offering Memorandum [Exhibit A to Form C] (incorporated by reference and included herein) ("Exhibit 3"). alluding to a licensing agreement with RMG (see Exhibit 3, page 4, "Corporate History").
>
> **37.** All conversations, decisions, and agreements between Greyson, Brown, Global, Called Higher, and BKLLC regarding this illusory licensing agreement were conducted without the knowledge of or consent from the President/Chief Executive Officer of RMG as required by and in direct violation of paragraph 7.4 of the Operating Agreement.
>
> 93. Defendants Brown, Global, BKLLC, and Called Higher procured a breach of the Operating Agreement by influencing, persuading, inducing, and/or conspiring with Greyson to entangle RMG in the Fraudulent Transfer through the illusory licensing agreement, leading to the establishment of the BKLLC dba RMGRP.
>
> 94. Defendants Brown, Global, BKLLC, Called Higher, Taylor, and WTC then persuaded, induced, and conspired with Greyson to create the BKLLC dba RMGRP bank account and to then redirect RMG revenues from clients into this new bank account, completely bypassing RMG and thus financially harming Plaintiffs.

(Compl. ¶ 32, 37, 93-94).

These allegations are largely conclusory, and fail to flesh out all of the elements of Mr. Landis's claims. There are literally no facts pled that support the third and fourth element of the

claim—which renders the claim subject to dismissal for failing to meet the "plausibility" pleading standard this Court must apply. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

But, there is an even bigger problem: paragraph 7.4 of Ribbow's operating agreement was not breached. That paragraph reads as follows in pertinent part:

> Except as expressly provided otherwise in this Agreement, all decisions relating to the business and affairs of the Company shall be made by, and all action proposed to be taken by or on behalf of the Company shall be taken by, the Founder and President/Chief Executive Officer without the joinder, consent or approval of any of the Members. Except as expressly provided otherwise in this Agreement, each of the Founder and President/Chief Executive Officer shall have the full power and authority to execute all documents and take all other actions on behalf of the Company and thereby bind the Company with respect thereto.

(*Id.*). Accordingly, Mr. Greyson—who is referred to elsewhere in the Operating Agreement as "Founder"—had full authority to enter into the licensing agreement on Ribbow's behalf. Thus, doing so did not breach the provisions of paragraph 7.4. Plaintiff's conclusory assertions otherwise simply do not hold water.

In order to state a claim for procurement of breach of contract, there must necessarily be a breach. Myers, 959 S.W.2d 158 (1997). Here, Plaintiff claims that section 7.4 was breached, but has pled nothing that would show such a breach occurred. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted.

Finally, these Defendants also note that Mr. Landis's Complaint does not allege any facts that would show he was personally harmed by the alleged (but nonexistent) breach. Indeed, the relief he seeks is only relief that would be provided to Ribbow. (Compl. ¶ 95). As damages are an essential element of a claim for procurement of breach of contract, and as Mr. Landis has not pled facts showing that he was harmed individually, his individual claim is also infirm and subject to dismissal. Myers, 959 S.W.2d 158 (1997).

Accordingly, Mr. Landis's individual and derivative claims for procurement of breach of contract must be dismissed under Fed. R. Civ. P. 12(b)(6) at this time.

### IV. The conversion claim is subject to dismissal because Mr. Landis has not shown that By Krave received any funds in defiance of the true owner' right.

In order to state a claim for conversion, Mr. Landis needed to plead facts sufficient to show the following:

> (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, and (3) in defiance of the true owner's rights.

Coffey v. Coffey, 578 S.W.3d 10, 24 (Tenn. Ct. App. 2018).[4]

Turning to the Complaint, Mr. Landis does not allege that any of his individual personal property was absconded with by anyone. Rather, he only claims that Ribbow's property was misappropriated. (Compl. ¶ 121). Thus, his individual claim for conversion must be dismissed.

As for the derivative claim on Ribbow's behalf, it fails because the licensing agreement expressly allowed By Krave to receive, possess, and utilize funds that would otherwise have been received by Ribbow. (Exhibit 1). Specifically, Section 1 of the Licensing Agreement gives By Krave the right (and obligation) to run Ribbow's business operation (called the "Platform"). (*Id.*). Then, Section 2.2(a) states that By Krave "shall invoice, collect and manage all gross revenues generated from the sale of products and/or services utilizing the Platform" (*Id.*).

Accordingly, the conduct described in the Complaint does not establish an appropriation of Ribbow's property "in defiance of the true owner's rights." Rather, the facts pled show that By Krave was contractually entitled (and, in fact, obligated) to receive and manage the funds that

---

[4] These Defendants note that, while discussing his conversion claims, Plaintiff refers to "Tennessee's codification of the Restatement, T.C.A. § 28-3-105". (Compl. ¶ 119). It is unclear what Plaintiff is referring to, as the referenced statute is the statute of limitations, not a codification of a common law tort.

13

Case 3:24-cv-00241   Document 15   Filed 04/01/24   Page 13 of 18 PageID #: 154

Plaintiff has filed suit over. Thus, Mr. Landis has failed to plead facts sufficient to establish the third element of his derivative claims, and it must accordingly be dismissed.

### V. The civil conspiracy claim is subject to dismissal because there is no actionable predicate tort and the claim was not pled with sufficient specificity.

It is black letter law that "Civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy" Watson's Carpet & Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). It is also "well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." Medlin v. City of Algood, 355 F. Supp. 3d 707, 718 (M.D. Tenn. 2019). Here, Plaintiff has run afoul of both these principles.

As described above, all of Plaintiff's tort claims are subject to dismissal. Thus, his civil conspiracy claim must suffer the same fate.

Meanwhile, Plaintiff has not pled any specific facts showing that any of these Defendants actually engaged in a civil conspiracy. Rather, the entirety of Plaintiff's pleading on this front is purely conclusory. (*See, e.g.,* Compl. ¶ 94). He has therefore failed to meet the applicable pleading standard, and his claim cannot be allowed to proceed.

Finally, Mr. Landis did not identify any individual harm he suffered as the result of the alleged conspiracy. (*See,* Compl. ¶ 121). Damages are an essential element of civil conspiracy, yet Mr. Landis pled none individually. Watson's Carpet & Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 186 (Tenn. Ct. App. 2007). Thus, he individually failed to state a claim upon which relief can be granted.

Accordingly, Mr. Landis's civil conspiracy claim (both individually and derivatively) is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

### VII. The unjust enrichment claim is subject to dismissal as well.

The final count asserted against these Defendants is Count Twelve, which is for unjust enrichment. To state a claim for unjust enrichment, Mr. Landis needed to plead facts showing the existence of

> 1) [a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.

Est. of Lambert v. Fitzgerald, 497 S.W.3d 425, 458 (Tenn. Ct. App. 2016).

Like several of his other claims, Mr. Landis did not identify any individual property, money, or other benefit *of his* which these Defendants received. Accordingly, he has (individually) failed to plead facts sufficient to establish the first, second, or third element of unjust enrichment. Thus, his individual claim must be dismissed for failure to state a claim upon which relief can be granted.

Meanwhile, as for the derivative claim, it is subject to dismissal for the same reason the conversion claim is subject to dismissal: By Krave was entitled (and obligated) to "invoice, collect and manage all gross revenues generated from the sale of products and/or services utilizing the Platform" (Exhibit 1, Section 2.2.). Accordingly, there was nothing "inequitable" about these Defendants doing exactly what the contractual relationship between By Krave and Ribbow called for. Plaintiff has therefore failed to allege facts sufficient to make out the third element of his derivative claim for unjust enrichment.

Accordingly, the individual and derivative unjust enrichment claim must be dismissed.

### VIII. Fee shifting is appropriate in this instance.

This lawsuit never should have been filed against these Defendants. Plaintiff knows as much, having been informed ahead of time that many of his claims were not meritorious as a matter

15

of law. (Exhibit 2). Nevertheless, he filed the instant action, and now these Defendants have been required to spend time and money addressing this matter. In turn, these Defendants now ask that the Court award them their attorney's fees and litigation costs to make them whole.

There are two sources of authority by which the Court can award fees here. The first is Tenn. Code Ann. § 48-249-804. That statute states that, for derivative claims like those which Plaintiff brought here, "the court may require the plaintiff to pay any defendant's reasonable expenses, including attorneys' fees, incurred in defending the proceeding, if it finds that the proceeding was commenced without reasonable cause." Tenn. Code Ann. § 48-249-804. Here, where Plaintiff did nothing to comply with a derivative action's demand requirements and then filed derivative claims that it had been warned were frivolous, the "without reasonable cause" criteria appears is met. Thus, the Court may—and should—award these Defendants the fees they incurred garnering dismissal of the derivative claims.

The second basis for fee shifting is the PSLRA and, more specifically, 15 USCA § 78u-4(c). That statute *requires* the Court, without a motion, to consider whether Mr. Landis violated Fed. R. Civ. P. 11(b) in this case. Said statute then requires the Court to award fees if it finds that Mr. Landis's filing (whether individually or derivatively) was in violation of Rule 11. The Court has already seen the warning Plaintiff received pre-suit about his securities claims being frivolous. (Exhibit 2). Then, this motion obviously serves as a second piece of notice to Plaintiff as to the frivolous nature of his claims.

If the Court is ruling on this Motion, Mr. Landis did not heed the warnings he has been provided—and has instead chosen to proceed on claims that are not "warranted by existing law." Fed. R. Civ. P. 11(b)(2). The Court should, accordingly, award fees as a sanction should it rule on this motion.

16

## IX. Final cleanup.

Finally, these Defendants note that the caption of this case includes as a Defendant "Ribbow Media Grp." As pled in the Complaint, that moniker is an assumed name for By Krave, LLC. (Compl. ¶ 30). It is not a separate entity. Accordingly, any claim purported to have been made against Ribbow Media Grp. must also be dismissed, or struck, as no such entity exists separate and apart from Defendant By Krave, LLC.

## CONCLUSION

For the reasons stated herein, all claims against Brown, Global Development Alpha, Called Higher Studios, and By Krave must be dismissed, with prejudice, and an appropriate award of fees and costs must be made.

Respectfully submitted,

*/s/ Sean C. Wlodarczyk*
Sean C. Wlodarczyk (#30410)
EVANS, JONES & REYNOLDS
401 Commerce St. Ste. 710
Nashville, TN 37219
Swlodarczyk@ejrlaw.com
P: (615) 259-4685

**CERTFICATE OF SERVICE**

      I hereby certify that, on this date a true and correct copy of the foregoing document has been served via the Court's ECF Filing System and/or U.S. Mail on the following:

Barry Neil Shrum
Shrum & Associates
1222 16th Avenue South Ste. 23
Nashville, TN 37212
Barry@shrumhicks.com

Dennis G. Disney
54 Music Square East Ste. 350
Nashville, TN 37203
dennis@shrumdisney.com

*Attorneys for Plaintiff*

Ash Greyson
219 Cavanaugh Lane
Franklin, TN 37064
cc: James Kelley
Neal & Harwell, PLC
1201 Demonbreun St. #1000
Nashville, TN 37203

 *Defendant*

Wiles + Taylor & Co., PC
4011 Armory Oaks Dr.
Nashville, TN 37204

*Defendant*

Robert Taylor
4011 Armory Oaks Dr.
Nashville, TN 37204

*Defendant*

This 1st day of April 2024.

                                                                             /s/ Sean C. Wlodarczyk