UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| BARRY LANDIS, DERIVATIVELY ON BEHALF OF RIBBOW MEDIA GROUP, LLC, AND INDIVIDUALLY | ) ) ) ) | |
| *Plaintiffs,* | ) ) | CASE NO.: 3:24-CV-00241 |
| vs. | ) ) | |
| ASH GREYSON, JASON BROWN, ROBERT TAYLOR, GLOBAL DEVELOPMENT ALPHA, LLC, BY KRAVE, LLC, RIBBOW MEDIA GRP, CALLED HIGHER STUDIOS, INC., WILES+TAYLOR, CO., PC | ) ) ) ) ) ) ) | JURY DEMAND |
| *Defendants.* | ) ) | |

## ASH GREYSON, ROBERT TAYLOR, AND WILES + TAYLOR CO., P.C.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND FOR AWARD FOR FEES

Defendants Ash Greyson, Robert Taylor, and Wiles + Taylor Co., P.C., submit this Memorandum of Law in support of their 12(b)(1) and 12(b)(6) Motion to Dismiss.

## I.     INTRODUCTION

Plaintiffs' two federal securities-fraud claims fail because, among other things, Plaintiffs never allege, nor can they allege, that they purchased or sold any security in connection with any allegedly false statement. Plaintiffs lack standing, and have failed to state a claim, with respect to both claims. These claims—the only purported basis for federal jurisdiction—must be dismissed. If dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1), the Court cannot exercise jurisdiction over the state-law claims. If dismissed for failure to state a claim under Rule 12(b)(6), the court should decline to exercise supplemental jurisdiction over the state-law claims.

Should the Court reach the state-law claims, they should also be dismissed. Most of the

1

claims should be dismissed because Mr. Landis has failed to make a demand and comply with applicable pleading requirements. Some are time-barred. For others, Plaintiffs have failed to state a claim.

The Court should dismiss all claims and award Defendants their expenses and attorney fees.

## II.     STATEMENT OF FACTS ALLEGED IN THE COMPLAINT

This is an action brought by Plaintiff Barry Landis individually and on behalf of Ribbow Media Group, LLC ("RMG"). RMG is a two-member limited liability company formed in the state of Tennessee in 2014. Compl. ¶ 10. Mr. Landis owns 10% of RMG and is the President and Chief Executive Officer. *Id.* ¶ 9. Mr. Greyson owns the remaining 90% and was given the title of Founder. *Id.* ¶ 11. "RMG is in the business of providing marketing, advertising, and promotion services to family-friendly and faith-based feature films." *Id.* ¶ 10.

Among other things, the Complaint alleges that Mr. Landis and RMG were damaged when RMG's customers and clients were directed to remit payments to a bank account that RMG did not own. The bank account at issue was opened in February 2023 in the name of Ribbow Media Grp ("RMGRP"). *Id.* ¶ 31. RMGRP was the assumed name of By Krave, LLC ("BKLLC"), a wholly owned subsidiary of Called Higher, Inc. ("Called Higher"). Called Higher's owners include Mr. Greyson and Global Development Alpha, LLC ("Global"). *Id.* ¶¶ 11-14. Jason Brown is the majority owner of Global. *Id.* ¶ 12.

The Complaint alleges that Mr. Greyson, Mr. Brown, Global, Called Higher, and BKLLC opened the RMGRP bank account, which was also approved by Mr. Taylor and his firm, Wiles + Taylor, which served as RMG's business manager and financial advisor. *Id.* ¶¶ 15, 29,31, 50. After establishing the bank account, Mr. Greyson, Mr. Brown, Global, Called Higher, and BKLLC "directed customers and clients of RMG to remit invoice payments into this new RMGRP account,

bypassing RMG completely . . . ." *Id.* ¶ 32. The Complaint further alleges that, in February 2023, "Defendants conspired with and on behalf of Called Higher" to file an Offering Memorandum with the Securities and Exchange Commission that "allud[ed] to a licensing agreement with RMG . . . ." *Id.* ¶ 32. The licensing agreement "ostensibly" provided that BKLLC "would perform the services that RMG had actually contracted with third party clients and customers to perform, thus fraudulently tricking RMG clients and customers into believing RMG was performing the services and that RMG was receiving payment." *Id.* ¶ 33. And it "ostensibly and illicitly provided that BKLLC would manage and control the revenue and expenses of RMG, all without knowledge of Plaintiffs." *Id.* ¶ 34.

In exchange for the licensing agreement, RMG was to receive the first $1,200,000 of the "Net Profits" from a Called Higher film called "Camp Hideout." *Id.* ¶ 35. But the Net Profits from the film were to be calculated on Called Higher's 45% adjusted gross receipts only after the majority investor earned back approximately $2,450,000. *Id.* ¶ 36. Thus, Mr. Landis and RMG "had a low probability of earning Net Profits," but Mr. Greyson, Mr. Brown, Global, Called Higher, and BKLLC would "earn monies regardless." *Id.* All decisions regarding the licensing agreement "were conducted without the knowledge of or consent from" Mr. Landis, the President and Chief Executive Officer of RMG, as required by paragraph 7.4 of the RMG operating agreement. *Id.* ¶ 37.

One contract covered by the licensing agreement was RMG's contract with Kingdom Faith Marketing Service, LLC, to provide marketing services for the film "Jesus Revolution." *Id.* ¶ 38. RMG sent two invoices to Kingdom Faith Marketing Service, LLC—an invoice for $1,000,000 on February 27, 2023, and an invoice for $115,000 on March 7, 2023—both of which directed payments to the RMGRP bank account. *Id.* ¶ 39. The Complaint alleges that these two invoices to Kingdom Faith Marketing Service, LLC, were sent to "bolster Called Higher's standing with the

SEC and/or for the purpose of attracting investors." *Id.* ¶ 40.

In September 2023, Defendants "conspired with Called Higher to amend, restate, and file" a form with the SEC that announced the termination of the licensing agreement before RMG could recognize any Net Profits. *Id.* ¶¶ 42, 44. The fees that RMG would have earned (absent the licensing agreement) from Kingdom Faith Marketing Service, LLC, were never deposited into the bank account of RMG. *Id.* ¶ 45.

The Complaint alleges that "Defendants created a sham licensing agreement between BKLLC and RMG under which BKLLC could register the assumed name of RMGRP," after which Defendants caused or approved the opening of the RMGRP bank account, which misled Called Higher's potential investors and RMG's clients and customers, including Kingdom Faith Marketing Service, LLC. *Id.* ¶¶ 49-55. And because the licensing agreement violated the RMG operating agreement, it was invalid, and Called Higher made false representations in an SEC filing that it had a valid licensing agreement and rightfully earned the fees under the licensing, which statements were intended to mislead the SEC, investors, and potential investors. *Id.* ¶¶ 59-61. The Complaint alleges that all Defendants are liable to RMG because they violated federal securities laws (Counts I and II), procured a breach of the RMG operating agreement (Count V), converted RMG property (Count IX), engaged in a civil conspiracy (Count XI), and were unjustly enriched (Count XII).

Mr. Landis and RMG also allege that Mr. Greyson's actions with respect to RMGRP constituted a conflict-of-interest transaction (Count III) and breached the RMG operating agreement (Count IV). Mr. Landis and RMG further allege that Mr. Greyson breached the RMG operating agreement by

- unilaterally causing, from 2015 to 2023, Mr. Landis's salary to be reduced from his "promised" annual salary of $150,000 to $60,000, in violation of paragraph 6.5 of the operating agreement (*id.* ¶¶ 20-22);

- forcing RMG, since 2014, to reimburse him for non-business-related personal expenses (*id.* ¶ 24); and

- causing RMG, in 2019, to establish a 401(k) plan for Mr. Greyson and his wife (who was not an employee) but not for Mr. Landis (*id.* ¶ 23).

Mr. Landis and RMG allege that the actions of Mr. Greyson, Mr. Taylor, and Wiles + Taylor constituted breaches of their fiduciary duties (Count VI), their duties of loyalty (Count VII), and their duties of good faith and fair dealing (Count VIII).

Finally—in a claim that is unrelated to the other RMG-related claims—Mr. Landis asserts a claim against Mr. Greyson for converting certain intellectual property owned by AshBarry Investments, Inc. (Count X), a corporation owned by Mr. Landis and Mr. Greyson. *Id.* ¶¶ 9, 11. The Complaint alleges that AshBarry Investments, Inc., acquired a 100% interest in a Content ID software called Inkling Collective. *Id.* ¶ 28. At some unspecified time in 2021, Mr. Greyson granted ownership of Inkling Collective to a third party called "Matter.is" without the approval of Mr. Landis and without compensating Mr. Landis. *Id.* ¶¶ 29, 129.

Plaintiffs allege that this Court has federal-question jurisdiction over the federal claims under § 1331 and supplemental jurisdiction over the state-law claims under § 1367. (Compl. ¶ 6.) Diversity jurisdiction under § 1332 is not available because complete diversity is lacking. (Compl. ¶¶ 9, 11, 15, 16 (alleging that Mr. Landis, Mr. Greyson, Mr. Taylor, and Wiles + Taylor are citizens of Tennessee.)

5

# III. LEGAL STANDARDS

## A. DISMISSAL UNDER RULE 12(b)(1)

"Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civile Procedure 12(b)(1)." *Lyshe v. Levy*, 854 F.3d 855, 857 (2017). "[T]he existence of subject matter jurisdiction may be raised at any time, by any party or even *sua sponte* by the court itself." *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). Plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Id.* at 818. Importantly, standing requires plaintiff to "establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Id.* at 818-19.

To establish standing, "a plaintiff must allege (1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress." *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992). These elements are the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560.A challenge to the court's subject-matter jurisdiction under Rule 12(b)(1) may be either a facial attack or a factual attack. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleadings." *Id*. When reviewing a facial attack, this Court must take the allegations in the complaint to be true. *Id*. However, when there is a factual attack, "a trial court has wide discretion to allow affidavits, documents, and even a limited discovery hearing to resolve the disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

When the court's subject-matter jurisdiction is challenged, "*plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc*., 798 F.2d 913, 915 (6th Cir. 1986) (emphasis in original).

## B.     DISMISSAL UNDER 12(b)(6)

Under Rule 12(b)(6), a motion to dismiss should be granted where a cause of action fails "to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Courts are not bound to accept as a true legal conclusion couched as factual allegation." *Id.* (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "[A] motion for dismissal pursuant to Rule 12(b)(6) will be granted if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).  When considering a 12(b)(6) motion to dismiss a complaint grounded in the Securities and Exchange Act, the Court "'may consider the full text of the SEC filings, prospectus, analysts' reports and statements 'integral to the complaint,' even if not attached, without converting the motion into one for summary judgment' under Federal Rule of Civil Procedure 56." *Stein v. U.S. Xpress Enterprises, Inc.*, No. 1:19-CV-98, 2020 WL 3584800, at *5 (E.D. Tenn. June 30, 2020) (quoting *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360–61 (6th Cir. 2001)). The Court can also consider "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n.* 528 F.3d 426, 430 (6th Cir. 2008).

7

When a plaintiff brings securities-fraud claims, the heightened pleadings standards under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Fed. R. Civ. P. 9(b) are applicable and require the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4 *et seq*. "[A] plaintiff's complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d at 478 (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 569 (6th Cir. 2008)). Additionally, the PSLRA requires more "[e]xacting pleading requirements": a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with regard to pleading scienter in securities fraud claims. *Id.* (quoting *Tellabs, Inc.*, v. *Makor Issues & Rts. Ltd.*, 551 U.S. 308, 313 (2007); 15 U.S.C. § 78u-4(b)(2). In particular, the PSLRA requires the plaintiffs to:

> (1) specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed [and]
> (2)…state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

*Id.*; 15 U.S.C. § 78u-4(b)(1), (2).

Together, Rule 9(b) and the PSLRA require plaintiffs to allege the "who, what, where, when, and why" of each fraudulent statement. *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 810 (6th Cir. 2022) (citations omitted). If the complaint does not answer the following questions, it has failed to sufficiently plead securities fraud: "Who said the statement? What is the statement? Where did they say it? When did they say it? Why is it misleading?" *Id.* (citations omitted).

## IV. LAW AND ARGUMENT

## A.  ALL CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

### 1.  The federal claims (Counts I and II) are not substantial and must be dismissed for lack of subject-matter jurisdiction.

Counts I and II should be dismissed because Plaintiffs lack standing to bring claims alleging violations of Section 10(b) of the Securities and Exchange Act (15 U.S.C. § 78j(b)) or Rule 10b-5 (17 C.F.R. § 240.10b-5). Section 10(b) "affords a right of action to *purchasers or sellers of securities injured by its violation*." *Tellabs, Inc.*, 551 U.S. at 318 (emphasis added). To have standing to assert such a claim, a plaintiff must have actually purchased or sold a security. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975) (upholding the "*Birnbaum* rule," under which only a purchaser or seller of a security can sue for a violation). The plaintiff in *Blue Chip Stamps* brought a private cause of action alleging violations of Rule 10b-5, but the plaintiff "neither purchased nor sold any of the offered shares." *Id.* at 725. The Supreme Court held that the *Birnbaum* rule "bar[red] respondent from maintaining this suit under Rule 10b-5." *Id.* at 731.

Here, Plaintiffs do not allege that they have purchased or sold any security. Thus, they lack standing to bring claims under Section 10(b) or Rule 10b-5, and the Court should dismiss Counts I and II for lack of subject-matter jurisdiction.

Dismissal for lack of subject-matter jurisdiction is appropriate because "'prior decisions inescapably render the claims frivolous,'" so they do not present "substantial" federal claims. *Transcontinental Leasing, Inc. v. Michigan National Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984) (quoting *Hagans v. Lavine*, 415 U.S. 528, 537-38 (1974)). *See also Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1248 & n. 1 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998) (quoting *Transcontinental Leasing* with approval and "equat[ing] 'substantial' with non-frivolous").

### 2. The Court cannot exercise supplemental jurisdiction over the remaining state-law claims.

Because Counts I and II must be dismissed for lack of subject-matter jurisdiction, the Court cannot exercise supplemental jurisdiction over the state-law claims, and the state-law claims must also be dismissed. *Musson Theatrical*, 89 F.3d at 1255 ("If the court dismisses plaintiff's federal claims pursuant to Rule 12(b)(1), then supplemental jurisdiction can *never* exist." (emphasis in original)).

### B. ALTERNATIVELY, PLAINTIFFS HAVE FAILED TO STATE FEDERAL CLAIMS, AND THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING CLAIMS.

### 1. Plaintiffs have failed to state federal claims.

Should the Court find that Counts I and II present substantial federal claims that confer subject-matter jurisdiction on the Court,[1] dismissal of these counts is still appropriate under Rule 12(b)(6). As noted, Counts I and II are brought under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. The statute and regulation are often referred to as Section 10(b) and Rule 10b-5. "Rule 10b-5 encompasses only conduct already prohibited by §10(b)." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008). The required elements are the same for both:

> The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b-5 are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.

*Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809-10 (2011) (internal quotations omitted); *see also JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, 615 F. Supp. 3d 750, 769 (M.D. Tenn. 2022). And, as set forth above, the heightened pleading standard under Fed.

---

[1]  The Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

R. Civ. P. 9(b) is applicable for actions brought pursuant to § 10(b) and Rule 10b-5 as well as the two additional pleading requirements of the PSLRA in connection with scienter. *See Louisiana Sch. Employees' Ret. Sys,* 622 F.3d at 478, *supra*; 15 U.S.C. § 78u-4(b)(1), (2). Failure to plead any one of these elements properly is sufficient grounds for dismissal. *See Darby v. Century Bus. Servs.*, Inc., 96 F. App'x 277, 284, n.3 (6th Cir. 2004) ("Since we have concluded that plaintiffs did not plead scienter . . . sufficiently, we do not need to decide whether plaintiffs have met the additional pleading requirements . . . .").

Plaintiffs' federal claims fall far short of the pleading requirements in all respects. Again, Plaintiffs are not purchasers or sellers of securities, which is fatal to their claims. *Blue Chip Stamps*, 421 U.S. at 749. Nor do they allege that they own any security in connection with the public offering of Called Higher. They cannot bring a claim under Section 10(b) or Rule 10b-5. *Blue Chip Stamps*, 421 U.S. at 749. Plaintiffs' failure to plead that they were purchasers or sellers of any security offered by these Defendants is fatal to their securities claim. First, as set forth above, Plaintiffs do not have standing to bring forth these claims. Further, since Plaintiffs are not sellers or purchasers of the securities, they are not capable of pleading facts to support the third, fourth, fifth, and sixth elements of a claim for securities fraud as those all depend upon actually buying or selling the security in question—nor have they done so.

With regard to the first element of misrepresentation, Plaintiffs have not pled facts sufficient to establish that any misrepresentation was made. For the misrepresentation element, "[m]isrepresented or omitted facts are material only if a reasonable investor would have viewed the misrepresentation or omission as having significantly altered the total mix of information made available." *Grae v. Corr. Corp. of Am.*, No. 3:16-CV-2267, 2017 WL 6442145, at *13 (M.D. Tenn. Dec. 18, 2017) (internal quotations omitted). The Complaint asserts that Defendants fraudulently misrepresented that it had a valid licensing agreement when the licensing agreement was invalid.

(Compl. ¶ 59). However, that licensing agreement (expressly referenced but not attached to Plaintiffs' Complaint) exists and is attached as __Exhibit 1__. The licensing agreement is valid and was signed on RMG's behalf by Mr. Greyson, who was authorized to enter into the same pursuant to Section 7.4(a) of RMG's operating agreement. (*Id*.; Compl. at Ex. 1). Representing that a licensing agreement between RMG and BKLLC existed was not a misrepresentation—and Plaintiffs have not pled facts sufficient to show otherwise. Accordingly, Plaintiffs have not met the misrepresentation element and the securities claims must be dismissed.

Plaintiffs have similarly failed to plead facts sufficient to support the element of scienter. Under the PSLRA, the plaintiff shall "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "Scienter can be established by either demonstrating a 'knowing and deliberate intent to manipulate, deceive, or defraud' or 'recklessness.'" *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc*., 29 F.4th 802, 812–13 (6th Cir. 2022) (citations and quotation omitted). The Supreme Court created a three-part test for determining whether a plaintiff has sufficiently pled scienter. *See Tellabs, Inc*., 551 U.S. at 322-23:

> "First, we must accept all factual allegations in the complaint as true." *Tellabs*, 551 U.S. at 322, 127 S.Ct. 2499. Next, we review the allegations holistically "to determine 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Dougherty*, 905 F.3d at 979 (quoting *Tellabs*, 551 U.S. at 322–23, 127 S.Ct. 2499). Finally, "we 'must take into account plausible opposing inferences' and decide whether 'a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.' " *Id.* \*813 (quoting *Tellabs*, 551 U.S. at 323–24, 127 S.Ct. 2499).

*City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc*., 29 F.4th 802, 812–13 (6th Cir. 2022).

Plaintiffs have not pled with particularity facts giving rise to a strong inference of scienter. The Complaint is void of any knowing or deliberate intent to manipulate, deceive, defraud or recklessness. At best, the Complaint claims Defendants "fraudulently misrepresented it had a valid

licensing agreement with RMG when in reality…[it] was invalid" and the "termination of the licensing agreement on SEC Form 1-SA strongly indicates the Fraudulent Transfer and associate illusory licensing agreement were simply intended to manipulate and deceive the SEC, investors, and potential investors." (Compl. ¶¶ 59, 61). These allegations fall woefully short of the particularity requirements of Rule 9(b) and the PSLRA's more "[e]xacting pleading requirements"; that a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind". *Louisiana Sch. Employees' Ret. Sys.*, 622 F.3d at 478 (quoting *Tellabs, Inc*., 551 U.S. at 313); 15 U.S.C. § 78u-4(b)(2). Not only have Plaintiffs failed to answer the who, what, when, where, and why requirements of Rule 9(b), but the scienter element is simply not there, which is not surprising given that the licensing agreement that Plaintiffs' claim is based upon actually exists. After all, it is impossible to intend to defraud when telling the truth, and therefore impossible for Plaintiffs to show scienter.

Counts I and II are so deficient that they are frivolous. Plaintiffs must be a buyer or a seller of security prior to filing the security claims alleged in this lawsuit. Yet, as set forth above, they don't have standing to bring these claims. Accordingly, for all of these reasons, Counts I and II should be dismissed with prejudice.

## 2. The Court should decline to exercise supplemental jurisdiction over the state-law claims.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction[.]" And a district court ordinarily should decline to exercise supplemental jurisdiction in this scenario.

"[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006) (citing 28 U.S.C. § 1367(c)(3) and *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir. 1996); *Gaff v. Fed. Deposit Ins.*

*Corp.*, 814 F.2d 311, 319 (6th Cir. 1987); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

"Residual jurisdiction should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh our concern over 'needlessly deciding state law issues.'" *Id.* (quoting *Landefeld*, 994 F.2d at 1182 (quoting *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991))). This case constitutes the ordinary case where the Cout should decline to exercise supplemental jurisdiction over the state-law claims. Thus, the state-law claims should be dismissed.[2] *Id.*

**C.  SHOULD THE COURT REACH THE MERITS OF THE STATE-LAW CLAIMS, THEY SHOULD BE DISMISSED.**

    **1.  The derivative claims are subject to dismissal for failure to make a demand and failure to comply with Fed. R. Civ. P. 23.1.**

Mr. Landis's derivative claims must be dismissed because he failed to make a demand prior to filing his derivative claims and failed to show that such a demand was futile as required by Tenn. Code Ann. § 48-249-802 and Fed. R. Civ. P. 23.1. RMG is a Tennessee limited liability company. (Compl. ¶ 9). Per its operating agreement, it is "member managed." (Compl. Ex. 1, at Sec 7.1: "The management of the business and affairs of the Company shall be vested in the Members"). Therefore, any derivative claim filed on behalf of the company is subject to the Tennessee Revised

---

[2]  These Defendants note that the Court may be prohibited from exercising supplemental jurisdiction over certain state-law claims in this case. Supplemental jurisdiction extends to claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *Gibbs*, 383 U.S. at 725 (state and federal claims "must derive from a common nucleus of operative fact"). Some state-law claims here do not appear to share a common nucleus of operative fact with the federal securities claims. For example, Count X is a wholly unrelated claim by Mr. Landis against Mr. Greyson regarding the alleged conversion of intellectual property belonging to a business other than RMG. Similarly, Count IV contains an allegation that Mr. Greyson lowered Mr. Landis's salary in violation of the operating agreement. While these claims do not appear to share a common nucleus of operative fact with the federal claims, these Defendants submit that dismissal is appropriate whether the Court could exercise supplemental jurisdiction or not.

Limited Liability Company Act's pre-suit demand requirements. *See*, *Kamen v. Kemper Financial Services, Inc*., 500 U.S. 90, 108–09 (1991) (holding that state law controls pre-suit demand requirements in Federal Courts). In particular, "[a] member or holder of financial rights of a member-managed LLC may bring a proceeding in the right of an LLC to recover a judgment in its favor, if members or other persons with authority to do so have refused to bring the proceeding, or if an effort to cause those members or other persons to bring the proceeding is not likely to succeed." Tenn. Code Ann. § 48-249-801(b).  In turn, Fed. R. Civ. P. 23.1 requires plaintiff to verify their complaint and allege "(1) that the plaintiff was a shareholder of member at the time of the transaction complaint off...(2) that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and (3) state with particularity…any effort by plaintiff to obtain the desired action from the …members; and the reasons for not obtaining the action or making the effort." Fed. R. Civ. P. 23.1(b)(1)-(3).

Mr. Landis's Complaint does not satisfy the procedural requirements of Rule 23.1 or the substantive requirements of Tennessee law. There is no allegation that a demand was made, and no explanation as to why a demand was not made (let alone an explanation with "particularity"). Nor is the Complaint verified. Thus, taken as true, the Complaint shows that no demand was made, and no compelling reason exists for that failure. Therefore, Mr. Landis's derivative claims are all subject to dismissal. *See, City of Pontiac Police & Fire Ret. Sys. v. Jamison*, 3:20-CV-00874, 2022 WL 884618, at *22 (M.D. Tenn. Mar. 24, 2022).

**2.      Count III is time-barred.**

Plaintiffs' conflict of interest claim is time-barred. The licensing agreement that gives rise to these allegations was entered into and effective as of February 21, 2023. (*See* Exhibit 1). The assumed name of RMGRP was registered with the Tennessee Secretary of State on February 22, 2023. (Compl. ¶ 30).  A new corporate bank account under the name RMGRP was established in

February 2023. (Compl. ¶ 31). The first invoice attached as Plaintiffs' stated Exhibit 4 (which was really filed as Exhibit 3) is dated February 27, 2023. (Compl ¶ 32). By all accounts, Plaintiffs claim the alleged "fraudulent transfer" occurred in February of 2023. (Compl. ¶ 59). Tenn. Code Ann.§ 48-249-407 provides a one-year statute of limitations to bring forward claims under Tenn. Code Ann.§ 48-249-403 or Tenn. Code Ann.§ 48-249-404. Plaintiffs filed their Complaint on March 1, 2024. Accordingly, Plaintiffs' claims are time-barred, and the Court should dismiss Count III under Rule 12(b)(6) because it fails to state a claim upon which relief may be granted.

**3.      No contract was breached, so Count IV must be dismissed.**

In order to state a breach of contract claim, Plaintiffs must show "(1) the existence of an enforceable contract, (2) nonperformance amounting to breach of the contract, and (3) damages caused by the breach of the contract." *Harper v. Chemtrade Logistics, Inc.*, No. 3:14-01952, 2014 WL 7359024, at *2 (M.D. Tenn. Dec. 22, 2014). Plaintiffs allege that Mr. Greyson breached the operating agreement by acting unilaterally without a vote of all members and allowed RMG to participate in the "fraudulent transfer" all under the guise of the licensing agreement. (Compl. ¶ 82). Yet, Plaintiffs have failed to mention that the operating agreement expressly permits Mr. Greyson to "execute all documents and take all other actions on behalf of the Company and thereby bind the Company with respect thereto." (Compl. at Ex. 1, Paragraph 7.4). Therefore, Mr. Greyson was permitted to enter into the license agreement and has not breached any contract by doing so.

Plaintiffs further claim that these Defendants breached the operating agreement in connection with not calling a full member vote on Mr. Landis's salary. (Compl. ¶ 83). However, Plaintiffs have expressly alleged that Mr. Landis's salary was reduced in 2015. (Compl. ¶ 22). Therefore, Mr. Landis was well aware of his breach of contract claims nine years ago. Accordingly, this claim is barred by the six-year statute of limitations for breach of contract and must be dismissed under Rule 12(b)(6). *See* Tenn. Code Ann. § 28-3-109.

Plaintiffs' remaining breach allegations are conclusory and do not state how these allegations are in breach of the operating agreement. (*See* Compl. ¶¶ 84-85). Notably, under Paragraph 6.5(b)(ii) of the operating agreement, a full member vote is not required for "salaries, bonuses and other compensation that are commercially reasonable in light of the Company's performance and are not intended to disproportionately alter distributions to the Members." (Compl. at Ex. 1, Paragraph 6.5(b)(ii)). Nowhere do Plaintiffs allege that there was "intent to disproportionately alter distributions" in connection with the breach allegations. *See id*. Any claim for damages under the contract is unclear at best. Accordingly, Plaintiffs have failed to state a claim for breach of contract and Count IV should be dismissed under Fed. R. Civ. P. 12(b)(6).

### 4. No breach was procured, and Count V must be dismissed.

To state a claim for procurement of breach of contract, Plaintiffs are required to show:

> 1) there must be a legal contract; 2) the wrongdoer must have knowledge of the existence of the contract; 3) there must be an intention to induce its breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract; 6) the act complained of must be the proximate cause of the breach of the contract; and, 7) there must have been damages resulting from the breach of the contract.

*Myers v. Pickering Firm, Inc*., 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997). *See also*, *New Life Corp. of Am. v. Thomas Nelson, Inc*., 932 S.W.2d 921, 926 (Tenn. Ct. App. 1996).

Plaintiffs allege in Count V that the operating agreement is valid and that Mr. Taylor and Wiles + Taylor procured the breach by persuading Mr. Greyson to adjust Mr. Landis's salary. (Comp. at ¶ 90). These allegations, while conclusory and preposterous, are barred by the three-year statute of limitations. *R&B Delivery, Inc. v. FedEx Ground Package Sys., Inc.*, No. 117CV00241JRGSKL, 2018 WL 2090822 at * 3(E.D. Tenn. May 4, 2018). Plaintiffs readily admit that Mr. Landis's salary was reduced beginning in 2015. (Compl. at ¶ 22). Plaintiffs were obligated to bring forth these salary claims six years ago, and they are prohibited from doing so now. Additionally, Plaintiffs seek damages under this count dating back seven years. (Compl. at ¶ 95).

Of course, even assuming Plaintiffs were able to move forward on a claim of procurement of breach of contract (which they cannot), they were obligated to do so within three years. *See R&B Delivery, Inc.*, 2018 WL 2090822 at *3.

With regard to the remaining allegations of breach, Plaintiffs have failed to make a showing of intent, malice, proximate cause, and damages. *See Myers*, 959 S.W. 2d at 158. Plaintiffs allege "upon information and belief" that Mr. Taylor and Wiles + Taylor procured a breach of the operating agreement. (Compl. at ¶ 90). Plaintiffs claim that Mr. Taylor and Wiles + Taylor "attempted to influence and persuade Landis that a decrease in salary benefitted him" and they "directly benefitted from the breach" and "persuaded, induced, and conspired with Greyson to create the BKLLC dba RMGRP bank account." (Compl. at ¶¶ 91-94). These conclusory statements do not demonstrate malice, proximate cause, or damages available to both Plaintiffs. And, as set forth above, there is no breach of contract to begin with. Accordingly, Mr. Landis's individual and derivative claims for procurement of breach of contract must be dismissed under Fed. R. Civ. P. 12(b)(6).

5.      **The breach of duty claims in Counts VI-VIII must be dismissed.**

Plaintiffs have asserted breach of fiduciary duty claims under Count VI, breach of duty of loyalty claims under Count VII, and breach of duty of good faith and fair dealing under Count VIII against these Defendants. Importantly, each of these foregoing causes of action must be brought within one year from the date of breach of violation. *See* Tenn. Code Ann. § 48-249-407. Despite the foregoing, Plaintiffs improperly seek to collect damages going back seven years. (Compl. at ¶¶ 103, 109, 115).

With regard to the breach of fiduciary duty claim, it is well-settled in Tennessee that members of a member-managed LLC do not owe a fiduciary duty to individual members. *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). Plaintiffs assert, "upon information and belief"

that these Defendants hid reimbursements for personal expenses under the guise of operating expenses, "perhaps as much as $100,000-$200,000." (Compl. at ¶ 101). Plaintiffs' Complaint fails to contemplate that the operating expenses were just that, operating expenses. As set forth in the operating agreement, full Member approval is *not* required for "reimbursement of reasonable out of pocket business expenses." (Compl. at Ex. 1, Paragraph 6.5(b)(ii) (emphasis added). Plaintiffs have made wild assumptions as to the cost of these expenses and have not provided any detail or anything other than a blanket allegation that these expenses are personal and not business expenses. Plaintiffs have not stated when these allegations occurred, and these claims are likely entirely time-barred. (Compl. at ¶ 100). To prevail on a breach of fiduciary duty claim, Plaintiffs must show: (1) a special duty exists by one person to another based on the nature of their relationship; (2) a breach of that special duty by the fiduciary; (3) the breach was the proximate cause of damages to the plaintiff; and (4) damages arising from the breach of the fiduciary duty. *Morrison v. Allen*, 338 S.W.3d 417, 438 (Tenn. 2011). Plaintiffs have not stated what special duty exists, if at all, between each of these Defendants and both Plaintiffs, nor have they established proximate cause and damages. Accordingly, Plaintiffs have not sufficiently articulated a claim upon which relief may be granted for breach of fiduciary duty and Count VI must be dismissed.

Plaintiffs have alleged a breach of duty of loyalty under Tenn. Code Ann. § 48–249–403(b)(2). This provision is applicable to a "*member's* duty of loyalty to a member-managed LLC and the LLC's other members." *Id*. (emphasis added). The statute does not refer to financial managers. *See id*. Accordingly, the claims against Mr. Taylor and Wiles + Co must be dismissed under Fed. R. Civ. P 12(b)(6). Plaintiffs' claim of breach of duty of loyalty against Mr. Greyson appears to be based on the alleged "fraudulent transfer." (Compl. at ¶¶ 107-108). As set forth in Paragraph D(1) above, these claims are barred by the one-year statute of limitations. *See* Tenn. Code Ann. § 48-249-407. And, as set forth above, the licensing agreement is not illusory, but a

valid licensing agreement. (*See* <u>Exhibit 1</u>). Further, "[a] member of a member-managed LLC does not violate a duty or obligation under this chapter or under the LLC documents, merely because the member's conduct also furthers the member's own interest." *Rock Ivy Holding, LLC v. RC Properties, LLC*, 464 S.W.3d 623, 641 (Tenn. Ct. App. 2014). For all of these reasons, Plaintiffs have not stated a claim upon which relief may be granted for breach of loyalty and Count VII must be dismissed.

Finally, Plaintiffs allege that these Defendants breached the duty of good faith and fair dealing in connection with Mr. Landis's salary, establishing a 401k, creating the "illusory" licensing agreement, and the alleged "fraudulent transfer." (Compl. at ¶ 112). The applicable statute, Tenn. Code Ann. § 48-249-403(d) only applies to "a member's duties to a member-managed LLC and its other members and holders of financial rights under this chapter or under the LLC documents." Tenn. Code Ann. § 48-249-403(d). Mr. Taylor and Wiles + Co. have no duty pursuant to this statute and this claim must be dismissed under Fed. R. Civ. P. 12(b)(6). Further, as set forth above, this claim is barred by the one-year statute of limitations. *See* Tenn. Code Ann. § 48-249-407. Plaintiffs expressly state that Mr. Landis's salary was reduced beginning in 2015. (Compl. at ¶ 22). And, as explained in Paragraph D(1) above, all of the allegations giving rise to the alleged "fraudulent transfer" occurred in February 2023 or prior. Plaintiffs also admit that the 401(k) at issue was established in 2019. Accordingly, Plaintiffs' breach of the duty of good faith and fair dealing claims are barred by the one-year statute of limitations and must be dismissed under Fed. R. Civ. P. 12(b)(6). Therefore, Plaintiffs have not stated a claim upon which relief may be granted for breach of good faith and fair dealing and Count VIII must be dismissed.

### 6. Plaintiffs' conversion claims in Counts IX and X fail.

To state a claim of conversion, Plaintiffs must show "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in

defiance of the true owner's rights." *China Exp. & Credit Ins. Corp. v. Carlisle Transp. Products Inc.*, No. 3:16-CV-00846, 2016 WL 4239970, at *3 (M.D. Tenn. Aug. 11, 2016)[3]. With regard to Count IX, Plaintiffs have stated that RMG's personal property was redirected into the BKLLC dba RMGRP bank account. (Compl. at ¶ 121). Plaintiffs have made no claim as to any property owned by Mr. Landis, and therefore, Mr. Landis's individual claim for conversion must be dismissed.

As set forth above, Plaintiffs' derivative claims are not properly before this Court. Nonetheless, RMG's conversion claims fail because the licensing agreement expressly allowed BKLLC to receive, possess, and utilize funds that would otherwise have been received by RMG. (*See* <u>Exhibit 1</u>). Specifically, Section 1 of the Licensing Agreement gives BKLLC the right (and obligation) to run RMG's business operation (called the "Platform"). (*Id*.). Then, Section 2.2(a) states that BKLLC "shall invoice, collect and manage all gross revenues generated from the sale of products and/or services utilizing the Platform" (*Id*.).

Accordingly, the conduct described in the Complaint does not establish an appropriation of RMG's property "in defiance of the true owner's rights." Rather, the facts pled show that BKLLC was contractually entitled (and, in fact, obligated) to receive and manage the funds that Plaintiffs have filed suit over. Accordingly, Mr. Landis has failed to plead facts sufficient to establish the third element of his derivative conversion claim and Count IX must be dismissed.

Additionally, Mr. Landis individually alleges in Count X that Mr. Greyson converted intellectual property. The assertion of intellectual property conversion is **not** a cause of action in Tennessee. *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 848 (M.D. Tenn. 2019) ("Plaintiff's conversion claims fail as a matter of law because Tennessee law does not recognize an action for the conversion of intellectual property."); *see also Wells v. Chattanooga*

---

3     Plaintiffs refer to "Tennessee's codification of the Restatement, T.C.A. § 28-3-105". (Compl. ¶ 119). It is unclear what Plaintiff is referring to, as the referenced statute is the statute of limitations, not a codification of a common law tort.

*Bakery, Inc.*, 448 S.W.3d 381, 392 (Tenn. Ct. App. 2014) ("an action for the conversion of intangible personal property is not recognized in Tennessee"). Accordingly, Mr. Landis failed to state a claim upon which relief may be granted and Count X must be dismissed.

### 7. There is no predicate tort and insufficient specificity for the civil conspiracy claim in Count XI.

Civil conspiracy is not an independent cause of action; instead, "one or more Defendants must be liable for an underlying tort that was committed pursuant to the conspiracy." *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 848 (M.D. Tenn. 2019) (citations omitted). "Conspiracy, standing alone, is not actionable where the underlying tort is not actionable*." Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (citing *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W. 3d 168, 179-80 (Tenn. Ct. App. 2007). It is "well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Medlin v. City of Algood*, 355 F. Supp. 3d 707, 718 (M.D. Tenn. 2019). Plaintiffs have run afoul of both these principles. As described above, all of Plaintiffs' tort claims are subject to dismissal. Thus, the civil conspiracy claim must suffer the same fate.

Meanwhile, Plaintiffs have not pled any specific facts showing that any of these Defendants actually engaged in a civil conspiracy. Rather, the entirety of Plaintiffs' pleading on this front is purely conclusory. (*See, e.g.,* Compl. ¶ 94). Plaintiffs, therefore, have failed to meet the applicable pleading standard, and this claim cannot be allowed to proceed. To prove civil conspiracy, a plaintiff must establish "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Carroll v. TDS Telecommunications Corp.*, No. 1:17-CV-01127, 2017 WL 6757566 (W.D. Tenn. Dec. 29, 2017) (internal quotes omitted). The civil conspiracy claim is made "upon information and belief." (Compl. at ¶ 136). There is no

degree of specificity with regard to the alleged conspiracy itself. Further, Mr. Landis did not identify any individual harm he suffered as the result of the alleged conspiracy. (*See,* Compl. ¶ 121). Damages are an essential element of civil conspiracy, yet Mr. Landis pled none individually. *Watson's Carpet & Floor Coverings, Inc.*, 247 S.W.3d at 186. Thus, he individually failed to state a claim upon which relief can be granted. Finally, the statute of limitations applicable here is one year. Tenn. Code Ann. § 28-3-104, *Polk v. Gen. Motors Corp.*, No. 3:05-CV-00335, 2006 WL 1806016, at *3 (M.D. Tenn. June 28, 2006).   Accordingly, Mr. Landis's civil conspiracy claim (both individually and derivatively) is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

> **8.**      **The unjust enrichment claim in Count XII must be dismissed.**

Finally, Count XII must also be dismissed as this claim is without merit. "Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." *BlueCross Blueshield of Tennessee v. Dunwoody Labs, Inc.*, No. 1:20-CV-167, 2021 WL 6275265, at *9 (E.D. Tenn. Dec. 8, 2021) (quoting *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)). The Court "will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation." *Id*. However, it is not necessary to consider these factors because they will only be imposed when there is not a contract. *Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596. Mr. Landis's unjust enrichment claims all stem from the operating agreement and the licensing agreement, and it should be dismissed. (Compl. at ¶¶ 140-142).

To state a claim for unjust enrichment, Plaintiffs are required to show "(1) a benefit conferred upon the defendants by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such a benefit under such circumstances that it would be inequitable for him

to retain the benefit without payment of the value thereof." *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 905 (M.D. Tenn. 2018) (internal quotes omitted). Like several of his other claims, Mr. Landis did not identify any individual property, money, or other benefit *of his* which these Defendants received. Accordingly, he has (individually) failed to plead facts sufficient to establish the first, second, or third element of unjust enrichment. Thus, his individual claim must be dismissed for failure to state a claim upon which relief can be granted. Meanwhile, the derivative claim is subject to dismissal for the same reason the conversion claim is subject to dismissal: BKLLC was entitled (and obligated) to "invoice, collect and manage all gross revenues generated from the sale of products and/or services utilizing the Platform" (Exhibit 1, Section 2.2.). Accordingly, there was nothing "inequitable" about these Defendants doing exactly what the contractual relationship between BKLLC and RMG called for. Plaintiff has therefore failed to allege facts sufficient to make out the third element of his derivative claim for unjust enrichment.

Additionally, the unjust enrichment claims against Mr. Taylor and Wiles + Taylor fail to state a claim for relief. The allegations against Mr. Taylor and Wiles + Taylor are based entirely on allegations that they continued to "receive fees for its work with the other defendants" while conspiring with and helping promulgate the unlawful and impermissible actions undertaken by all defendants." (Compl. at ¶ 144). First, this claim fails for the same reason the conspiracy claims fails. Further, Plaintiffs have not stated what benefit was conferred on these Defendants by the Plaintiffs or that it would be inequitable for them to retain these unidentified fees. Finally, to the extent Plaintiffs seek unjust enrichment damages extending beyond the six-year statute of limitations, those claims must also be dismissed. *See* Tenn. Code Ann. § 28-3-109(a)(3), *Alsbrook v. Concorde Career Colleges, Inc.*, 469 F. Supp. 3d 805, 829 (W.D. Tenn. 2020). Accordingly, the individual and derivative unjust enrichment claim against these Defendants must be dismissed.

**D.      FEE SHIFTING IS APPROPRIATE.**

This lawsuit never should have been filed against these Defendants. Nevertheless, Plaintiffs filed the instant action, and now these Defendants have been required to spend time and money addressing this matter. In turn, these Defendants now ask that the Court award them their attorneys' fees and litigation costs to make them whole. There are two sources of authority by which the Court can award fees here. First, under Tenn. Code Ann. § 48-249-804, "the court may require the plaintiff to pay any defendant's reasonable expenses, including attorneys' fees, incurred in defending the proceeding, if it finds that the proceeding was commenced without reasonable cause." Tenn. Code Ann. § 48-249-804(a). Here, where Plaintiff did nothing to comply with a derivative action's demand requirements and then filed derivative claims "without reasonable cause." Thus, the Court may—and should—award these Defendants the fees they incurred garnering dismissal of the derivative claims. Second, under 15 USCA § 78u-4(c) requires the Court, without a motion, to consider whether Mr. Landis violated Fed. R. Civ. P. 11(b) in this case and award fees if it finds that Mr. Landis's filing (whether individually or derivatively) was in violation of Rule 11.

<h1 style="text-align:center">V. CONCLUSION</h1>

For the reasons stated herein, all claims against Defendant Greyson, Taylor, and Wiles + Taylor must be dismissed, with prejudice, and an appropriate award of fees and costs must be made.

Respectfully submitted,

**NEAL & HARWELL, PLC**


By: */s/ William T. Ramsey*
 William T. Ramsey, #009245
 Mariam N. Stockton, #29750
 Benjamin C. Aaron, #034118
1201 Demonbreun St., Suite 1000
Nashville, TN  37203-3140
Phone:  (615) 244-1713
Fax: (615) 726-0573
ramseywt@nealharwell.com
mstockton@nealharwell.com
baaron@nealharwell.com

*Counsel Defendants Ash Greyson, Robert Taylor, and Wiles + Taylor Co., PC*


## CERTIFICATE OF SERVICE

 I hereby certify that a true and correct copy of the foregoing has been sent via the Court's electronic filing system on the following this the 17th day of April, 2024:

Barry Neil Shrum
Dennis G. Disney
SHRUM DISNEY & ASSOCIATES, PC
54 Music Square East, Suite 350
Nashville, TN 37203
barry@shrumdisney.com
dennis@shrumdisney.com

*Attorneys for Plaintiffs*

Sean C. Wlodarczyk
EVANS, JONES & REYNOLDS
401 Commerce Street, Suite 710
Nashville, TN 37219
swlodarczyk@ejrlaw.com

*Attorney for Jason Brown,*
*Global Development Alpha, LLC,*
*Called Higher Studios, Inc., and*
*By Krave, LLC*


 */s/ William T. Ramsey*
 William T. Ramsey

26